HOUSTON CHRONICLE PUB. CO. v. MURRAY et al.

(Court of Civil Appeals of Texas. Galveston. March 15, 1916. Rehearing Denied April 6, 1916.)

TRIAL ☞194(6)—INSTRUCTIONS.

In a servant's action for injuries, there being a conflict in evidence as to the fact of employment, an instruction that the plaintiff was acting as the servant and in the employ of the defendant was improper, as on the weight of

the evidence and an invasion of the province of the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 451; Dec. Dig. ⚮194(6).]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Suit by Melba Palmer Murray and another against the Houston Chronicle Publishing Company and another. From a judgment for the plaintiffs and for the defendant Kyle Company, the named defendant appeals. Reversed and remanded.

Kittrell & Kittrell, of Houston, for appellant. Hume & Hume, of Houston, for appellees.

McMEANS, J. T. J. Murray and his wife, Melba Palmer Murray, brought this suit against the Houston Chronicle Publishing Company and the Kyle Company to recover damages for personal injuries sustained by Mrs. Murray while enacting a part as an actress in the production of certain scenes to be photographed for the purpose of securing a motion picture film. Plaintiffs alleged that at the time of Mrs. Murray's injuries she was in the employment of the Houston Chronicle Publishing Company by virtue of a contract made by her with said Publishing Company through its manager, L. J. Van Laeys, and was then performing its service under the direction and control of said Van Laeys.

Defendant publishing company denied that Mrs. Murray was in its employment at the time she was injured, and denied that she had been employed by its manager, Van Laeys, and pleaded that the work of producing the motion picture films was being done by the Hotex Film Company, a partnership, under a contract with the publishing company, which, as an independent contractor, undertook to do the work and devised the methods and directed the execution of the same, and alleged that said Van Laeys had no control over the method, manner, agencies, or details thereof, and no control or direction of any person used as an actor or actress in connection with the making of the films; his only connection with said production being to conceive the plan or scheme and to exercise the supervision of the doing of the work to the extent of seeing that it was done according to contract. It also alleged that Mrs. Murray was employed and directed in her work by the Hotex Film Company.

The pleadings of both parties are quite lengthy, and we have not undertaken to here set out more than the substance of such of the pleadings as is necessary to show that the issue of whether Mrs. Murray was the servant or employé of the publishing company was sharply drawn.

When the introduction of the evidence had been completed, the court instructed the jury selected to try the case to return a verdict for the Kyle Company, and this being done, a judgment in favor of that defendant was duly entered, and has not been appealed from. The court then charged the jury in part as follows:

"Now you are instructed that the uncontroverted evidence in this case shows that the said Melba Palmer Murray on the 27th day of June, 1914, was the servant and in the employ of the Houston Chronicle Publishing Company in connection with the production of a moving picture film to be known as 'Barbara, the Mysterious Maid.' The defendant Houston Chronicle Publishing Company, as the master of said Melba Palmer Murray, owed her the duty to furnish her with a reasonably safe place in which to do said work, and to warn and instruct her of any danger or risk incident to said employment, and to exercise ordinary care not to unnecessarily expose her to dangers or risks incident thereto."

The court further instructed the jury that plaintiffs were entitled to recover of defendant for the injuries alleged, which the jury might find from the evidence Mrs. Murray sustained on the occasion in question. The jury returned a verdict for plaintiffs for $4,680, and a judgment was thereon accordingly entered in their favor for said sum, from which the defendant has appealed.

By an appropriate assignment of error appellant complains of the action of the court in giving the charge above set out, its contention being, in effect, that the charge is upon the weight of the evidence and an invasion of the province of the jury.

On June 13, 1914, the Hotex Film Company, a partnership composed of John W. Boggs and King W. Vidor, entered into the following written contract with the Houston Chronicle Publishing Company, viz.:

"Whereas, on this 13th day of June, 1914, the hereinafter parties, the Hotex Film Manufacturing Company, hereinafter styled party of the first part, and the Houston Chronicle Publishing Company, hereinafter styled party of the second part, enter into the following agreement, to wit:

"The party of the first part agrees to manufacture and deliver to the party of the second part a motion picture film to be known as 'The Chronicle's News Film' (said film to be approximately five hundred [500] feet in length, including titles and scenes), once a week for a period of four consecutive weeks.

"The party of the second part agrees to pay to the party of the first part for said film at the rate of seventeen (17c.) cents per foot, or a weekly consideration of eighty-five ($85.00) dollars, together with 15 per cent. of the net profits derived from the exhibition of said film.

"Party of the second part agrees to furnish the party of the first part with sufficient subjects for making said film, and to assist in any way that would benefit the picture."

On the issue of whether Mrs. Murray at the time she was injured was in the employment and a servant of the appellant the following testimony was introduced, and is set out in appellant's brief:

Mrs. Murray testified:

"Miss Lowery told me that Mr. Boggs rang her up and asked if I was in town; that Mr. Van Laeys—the Chronicle—was going to make a picture, and he (Boggs) knew I wanted to get in that picture if I could, and he (Boggs) would recommend me to Van Laeys as an actress. * * * Well, in that way the first connection between me and the picture business was through

Mr. Boggs. I have known Mr. Boggs six or seven years. I had never seen Mr. Van Laeys face to face before I went to the Chronicle office, June 25th. Mr. Van Laeys rang me up and asked me if I would take the part of Barbara in the 'Mysterious Maid.' I did not know that Mr. Boggs and Mr. Vidor had made a contract with the Chronicle to make the picture and furnish the actress—procure her. I took instructions from Mr. Van Laeys, the man who engaged me. Mr. Boggs never employed me. Mr. Boggs did not engage me. Mr. Van Laeys engaged me. He (Van Laeys) said: 'I have engaged Miss Palmer to play Barbara.' Boggs did come up with his camera in the car and picked out the places for the scene; from place to place they would make a scene. When I reached Lovett boulevard Boggs and Vidor were the only ones in the car with me. Mr. Van Laeys alone engaged me. Mr. Van Laeys alone had the right to discharge me. He had the legal right to control me, and nobody else had. Mr. Van Laeys told me what to do. Mr. Boggs and Mr. Vidor did ride with me in the car to town. Mr. Vidor did not direct the vehicle how to go. Mr. Boggs did direct the car to stop at the depot where that picture was taken. I had seen moving pictures before this."

L. J. Van Laeys testified:

"I did not employ Miss Melba Palmer in any capacity; neither did I contract to pay her any sum or sums for any service. The Hotex Film Company employed Miss Palmer. She was employed by Mr. Vidor and Mr. Boggs, managers of the Hotex Film Company. A picture was to be taken by Boggs and Vidor under a contract with the Houston Chronicle Publishing Company. The Hotex Film Company engaged the car and driver with the distinct understanding that the Houston Chronicle Publishing Company should not be at any expense for the services of the Kyle Company. * * * It is not a fact that I engaged the plaintiff to represent the title role of Barbara. It is not a fact that I agreed to pay plaintiff for her services, but I did approve an agreement between her and the Hotex Film Company for payment of $1.50 a performance, an item of expense covered in their voucher checks. It is not a fact that I had, prior to the time the taxicab was driven over said railroad crossing, instructed said driver of said taxicab to go over the crossing at a slow rate of speed. It is not a fact that I stated to Stokes that I had procured the taxicab and driver from the Kyle Company."

From the foregoing it will be seen that Mrs. Murray testifies positively that she was employed by Mr. Van Laeys, acting for his principal, the Houston Chronicle Publishing Company. It is evident therefore that, if any such contract of employment was made, it was through Mr. Van Laeys, and not through some other officer or agent of the appellant corporation. If her testimony stood alone, there would have been some plausible grounds for the court's charge to the effect that the uncontroverted evidence showed that Mrs. Murray was the servant and in the employment of the appellant. But Mr. Van Laeys testified with equal positiveness that he did not employ Mrs. Murray, but that she was employed by the Hotex Film Company. His testimony was amply sufficient to controvert the testimony of Mrs. Murray, and to require the submission of the issue to the jury. The charge was on the weight of the evidence, and directly violative of article

1971 of the Revised Statutes. Such charges have been too frequently condemned by our appellate courts to require citation of the cases which so condemn them. Where there is a disputed fact issue, the court is required to submit such issue to the jury. It is only where the evidence is of such character that there is no room for ordinary minds to differ as to the conclusion to be drawn from it that the court is authorized to take the question away from the jury. Lee v. Railway, 89 Tex. 588, 36 S. W. 63.

For the error in giving the charge the judgment must be reversed. For this reason it would not be profitable to discuss the other assignments of error presented by appellant. Upon another trial all disputed questions of fact, in so far as raised by the pleadings of the parties, should be submitted for the determination of the jury, both those relied upon by plaintiff to establish the liability of defendant as well as the affirmative defenses relied upon by defendant to defeat a recovery.

For the error indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.